IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| TIMOTHY C. OWEN, and GLORIA J. OWEN, on behalf of themselves and all others similarly situated, | ) ) ) ) |
| Plaintiffs, | ) Case No. 06-4067-CV-C-NKL ) |
| v. | ) ) |
| GENERAL MOTORS CORPORATION, | ) ) |
| Defendant. | ) |

ORDER

Pending before the Court is Defendant General Motors Corp.'s ("GM") Motion to Dismiss [Doc. # 15]. For the reasons set forth below, the Motion will be granted in part and denied in part.

I.  **Factual Background**

For the purposes of GM's Motion to Dismiss, the Court assumes as true the following facts alleged in Plaintiffs Timothy and Gloria Owen's ("the Owens") Complaint [Doc. # 1]. In October 1997, the National Highway Traffic Safety Administration ("NHTSA") Office of Defects Investigation ("ODI") began investigating consumer complaints concerning windshield wiper failures in certain GM vehicles. In July 1998, GM acknowledged "a defect which relates to motor vehicle safety . . . in certain 1995-96 ST Trucks and certain 1994-96 CK Trucks." GM also stated:

1

> [S]ome of the these vehicles have solder joints near the wiring harness
> connector that could crack. This could cause the windshield wiper to work
> intermittently and ultimately result in inoperative wipers. If this were to
> occur in a severe weather situation, driver visibility could be reduced,
> which could result in a vehicle crash without prior warning.

Subsequently, GM recalled over 1.5 million vehicles in connection with this defect pursuant to NHTSA Recall No. 98V-150. GM notified some owners of the recall, but removed from the notification list owners of vehicles that had been repaired prior to November 1998. Consequently, owners of recalled vehicles that were repaired out-of-warranty prior to November 1998 were not notified and had to pay for their own repairs.

In May 2002, the NHTSA/ODI opened another investigation into complaints of windshield wiper failure in GM vehicles. By that time, ODI had received more than 2,700 owner complaints and GM had received 225,000 warranty claims related to wiper problems. There had also been at least eleven reported windshield wiper related auto crashes through December 1999. The new investigation included all vehicles originally investigated that GM did not recall. NHTSA/ODI questioned GM's rationale for excluding those vehicles, and expanded its investigation to include all 1994-1998 vans, ST, and CK vehicles which shared the wiper module in question, an additional 6,726,999 vehicles. In March 2003, NHTSA/ODI sent GM a letter detailing the results of its investigation and requesting that GM recall an additional 2.3 million vehicles for the same defect as the previous recall. Although GM initially asserted that the alleged defect was not related to motor vehicle safety (citing the low number of accidents/injuries associated with the wipers), it admitted in March 2003 that "safety consequences rising

2

up to the level of unreasonable risk can ensue from failure of windshield wiper systems."
In April 2003, GM recalled an additional 1.7 million vehicles because "the windshield wiper motor may fail due to cracked solder joints on the controller circuit board"; however, GM indicated that the recall was due to NHTSA concerns rather than its own belief that the wipers posed a safety problem. GM did not recall the remaining 5.8 million vehicles with the same windshield wiper assembly.

On May 8, 1998, the Owens purchased a 1999 Chevrolet Tahoe which they have kept in good repair and to which they have made no material modifications. On October 9, 2004, Plaintiff Timothy Owen was operating the Tahoe in heavy rain westbound on Interstate 70 just east of Kansas City, Missouri. As he drove through a construction zone with concrete barriers on either side of the lane, his windshield wipers stopped suddenly in a near vertical position, substantially impairing his vision. He could not pull off the road due to the concrete barriers and had to continue driving despite his poor visibility. He attempted to adjust the wiper controls which resulted in intermittent wiper movement for the next 10 to 15 minutes. Eventually, he was able to pull off the interstate and wait for the rain to pass before continuing on to Kansas City. The wiper problems recurred on several subsequent occasions.

On October 12, 2004, Timothy Owen contacted his dealer about repairing the wiper assembly. He learned from the owner of the dealership that other Chevrolet trucks had been recalled by GM for the same problem, but that the Owens's Tahoe had not been part of the recall. The Owens paid $91.87 to repair the wiper assembly themselves. On

3

October 18, Timothy Owen filed a complaint with the Missouri Attorney General seeking reimbursement from GM. The Owens were eventually told that GM would not reimburse them. They filed the present lawsuit on April 3, 2006, alleging six counts. GM has moved to dismiss the Complaint on several grounds.

**II.     Discussion**

   **A.     Count I: Unjust Enrichment**

GM moves to dismiss the Owens's unjust enrichment claim on the grounds that Missouri law does not permit recovery on a quasi-contract theory when a valid, express contract governs the subject matter of the parties' dispute. *See, e.g., Banner Iron Works, Inc. v. Amax Zinc Co.*, 621 F.2d 883, 889 (8th Cir. 1980) (finding of a valid contract precludes recovery on a quantum meruit theory under Missouri law); *Krupnick & Associates, Inc. v. Hellmich*, 378 S.W.2d 562, 569-570 (Mo. 1964) ("express contract would also preclude the existence of the contract implied by law or quasi contract[] necessary to form the basis for recovery in quantum meruit"). All the cases cited by GM, however, involve procedural postures much later in the litigation cycle. The fact that a plaintiff cannot simultaneously recover damages for both breach of an express contract and unjust enrichment does not preclude that plaintiff from pleading both theories in her complaint. The Federal Rules of Civil Procedure permit pleading in the alternative. See Fed. R. Civ. P. 8(e)(2); *and see Joseph C. Sansone Co. v. Dow Corning Corp.*, 2006 U.S. Dist. LEXIS 28237, at *1 (E.D. Mo. 2006) ("In Missouri, a party may plead both breach of contract and quantum meruit.").

4

The Owens may have pleaded in another Count the existence of a valid contract which, if proved, would negate their claim for unjust enrichment; however, the Court must also assume for the purposes of a motion to dismiss that the allegations necessary to the unjust enrichment count are also true, namely that there was no valid contract. A rule allowing for alternative pleading would be meaningless if the assumption of facts in favor of the plaintiff at the motion to dismiss stage of a lawsuit could foreclose mutually exclusive theories. Count I will not be dismissed.

### B. Count II: Injunctive Relief

In Count II, the Owens seek injunctive relief on behalf of the putative class in the form of an imposed recall of all GM automobiles with the defective wiper assembly. Because the Owens have already had their own wipers replaced and would thus not be affected by the injunctive relief sought, GM challenges their standing to bring Count II.

Article III of the United States Constitution grants federal courts limited jurisdiction to decide "cases and controversies." To satisfy this jurisdictional requirement, a plaintiff must establish (1) an injury in fact which is (2) fairly traceable to the defendant's conduct and which (3) will likely be redressed by a favorable decision. *See Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180-181 (2000). Should the Owens succeed in forcing the recall, they would be unaffected by the recall as their wiper assembly has already been replaced. Hence, the requested relief would not redress their injury. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83,

5

104 n. 5 (1998) (to satisfy the redressability prong, the plaintiff must demonstrate that he "personally would benefit in a tangible way from the court's intervention").

The Owens contend that the Supreme Court's holdings in *Gratz v. Bollinger*, 539 U.S. 244 (2003), or *Roe v. Wade*, 410 U.S. 113 (1973), are applicable to their case and demonstrate that they have standing. The standing issue in *Gratz* concerned the named plaintiff's enrollment in another university. Justice Stevens was concerned that an injunction against the University of Michigan's race-based admission criteria would not affect the plaintiff because he had not applied to transfer to Michigan. The majority held that it was enough that the plaintiff intended to apply for transfer upon the issuance of the injunction. *Gratz*, 539 U.S. at 262. In the present case, however, there is nothing for the Owens to do even if a recall were ordered. If they had not yet taken their Tahoe to get the wiper assembly replaced but intended to do so after an injunction was entered, then *Gratz* would be applicable.

*Roe* is also inapposite to the present case. The Supreme Court held that Jane Roe's law suit was not mooted by the birth of her child because pregnancy was capable of repetition. *Roe*, 410 U.S. at 125. There are no similar circumstances in the Owens's case. There is no reason to believe that they will have to replace their wiper assembly again, especially in so short a time as to preclude judicial review. Count II is dismissed.[1]

    **C.**     **Counts III, IV and VI: Breach of Implied and Express Warranties**

---

[1] The Court makes no finding concerning the Owens's ability to represent a class seeking an injunction.

6

The Owens allege in Count III that "GM breached its implied warranty that the Class Vehicles were fit and safe for their ordinary or intended purpose by placing defective, unmerchantable and unfit Class Vehicles into the stream of commerce . . . ." Compl. ¶ 143. They allege in Count IV that "GM breached express warranties of merchantability in the sale and/or lease of Class Vehicles . . . in that the Class Vehicles were and are not fit for their ordinary and intended purpose . . . ." Compl. ¶ 150. The source of these warranties is unclear from the Complaint; however, the language in Count III closely tracks the language of Mo. Rev. Stat. § 400.2-315 (Implied Warranty–fitness for particular purpose),[2] and the parties reference in their briefs an express three year/ 36,000 mile bumper-to-bumper warranty included in the purchase of the Owens's Tahoe which would seem to be the warranty disputed in Count IV.

Under Missouri law, both express and implied warranties are subject to the four year statute of limitations for all breach of contract actions. Mo. Rev. Stat. § 400.2-725(1). The statute further states that the four year limit may be shortened to not less than one year by prior agreement of the parties, but it may not be extended beyond four years. *Id.* Missouri law further provides that

---

[2]Paragraph 139 of Count II states, "At the time GM sold and/or leased the Class Vehicles . . . , GM knew or had reason to know the ordinary or intended purpose for which the vehicles were required, and that Class Plaintiffs . . . were relying on GM's skill or judgment to select or furnish vehicles suitable for that purpose." Mo. Rev. Stat. §400.2-315 states, "Where the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods there is unless excluded or modified under section 400.2-316 an implied warranty that the goods shall be fit for such purpose."

7

> A cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach. A breach of warranty occurs when tender of delivery is made, except that where a warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance the cause of action accrues when the breach is or should have been discovered.

*Id.* § 400.2-725(2). The Owens received their Chevrolet Tahoe on or about May 8, 1998. Thus, the statute of limitations for any breach of warranty would have run by May 8, 2002, unless the warranty "explicitly extend[ed] to future performance," in which case the statute of limitations would run four years from the date the breach was or should have been discovered during the warranty period.

### 1. Implied Warranty or Merchantability

Whatever the source of the implied warranty underpinning Count III, it cannot–by definition–expressly extend to future performance. Interpreting Minnesota Statute § 336.2-725, the same four year Uniform Commercial Code statute of limitations adopted by Missouri at Mo. Rev. Stat § 400.2-725, the Eighth Circuit has held that

> Only a specific type of express warranty . . .will suffice to alter the normal rule of accrual on breach of warranty actions. Under the U.C.C., the warranty must 'explicitly extend[] to future performance of the goods,' Minn. Stat. § 336.2-725(2), or else the buyer's breach of warranty action accrues on tender of delivery. . . . Implied warranties cannot, by their very nature, explicitly extend to future performance.

*Marvin Lumber & Cedar Co. v. PPG Indus.*, 223 F.3d 873, 879 (8th Cir. 2000) (internal citations omitted); *see also May v. AC&S, Inc.*, 812 F. Supp. 934, 944 (E.D. Mo. 1993) (interpreting Mo. Rev. Stat. § 400.2-725 and holding that, "[b]y its very nature, an implied warranty of merchantability does not warrant future performance of a product.").

8

Any warranty of merchantability and fitness for a specific purpose that was implied into the contract between GM and the Owens for the sale of their Tahoe was limited to four years from the date of tender by Mo. Rev. Stat. § 400.2-725(1)-(2). The Tahoe was tendered on or about May 8, 1998. Any cause of action for the breach of that implied warranty accrued on that date and became time-barred on May 8, 2002. Because the Owens filed their present case on April 3, 2006, Count III is barred by the statute of limitations.

### 2. Express Warranty

The purchase of the Owens's Tahoe was accompanied by a GM New Vehicle Limited Warranty covering "repairs to correct any vehicle defect related to materials or workmanship during the warranty period."[3] The warranty period "for all coverages begins on the date the vehicle is first delivered or put in use and ends at the expiration of the coverage period. . . . The complete vehicle is covered for 3 years or 36,000 miles, whichever comes first . . . ." Def. Ex. A.

Missouri courts have construed such warranties as explicitly extending to future performance within the meaning of Mo. Rev. Stat. § 400.2-725. *See Ouellette Mach. Sys. v. Clinton Lindberg Cadillac Co.*, 60 S.W.3d 618, 621 (Mo. Ct. App. 2001) ("By

---

[3] GM attached a copy of its New Vehicle Limited Warranty to its Motion to Dismiss as Exhibit A. Although the Owens note in their Suggestions in Opposition that the Warranty attached to GM's Motion is not the same warranty they received, they concede that the language quoted from the warranty by GM is identical to the language in their warranty. Because the Owens refer to their warranty in their complaint, it is appropriate for the Court to consider the warranty on a motion to dismiss. *See In re GMC Anti-Lock Brake Prods. Liab. Litig.*, 966 F. Supp. 1525, 1532 (E.D. Mo. 1997), *aff'd, Briehl v. GMC*, 172 F.3d 623 (8th Cir. 1999).

9

warranting the future performance of the automobile for [four years or 50,000 miles, whichever comes first], GM explicitly extended Ouellette's limited warranty to a warranty for future performance."); *Wienberg v. Independence Lincoln-Mercury*, 948 S.W.2d 685, 689 (Mo. Ct. App. 1997) (holding that the remaining 34 months or 34,000 miles of a limited warranty was a warranty extending to future performance). Thus, the Owens's express warranty triggers the discovery rule of Section 400.2-725(2).

But this rule is not without limits. Although a cause of action for breach of an express warranty extending to future performance "accrues when the breach is or should have been discovered" under Mo Rev Stat. 400.2-725(2), the discovery must still be made within the period covered by the express warranty because the performance of the warranty ends with the end of the warranty period. In *Bldg. Erection Servs. v. JLG, Inc.*, 376 F.3d 800 (8th Cir. 2004), the plaintiff purchased a crane on October 17, 1991, with a five-year warranty on all structural components. On September 30, 1999, the crane malfunctioned suddenly, injuring two painters and damaging the roof of a house. Plaintiff sued the crane manufacturer on November 21, 2000, for breach of warranty, but the Eighth Circuit ruled that the claim was untimely. Noting the five year express warranty and Mo. Rev. Stat. 400.2-725's four year statute of limitations, the Court of Appeals held that the plaintiff crane owner "had at most five years to discover a breach before the warranty expired on October 17, 1996, and then at most another four years until October 17, 2000, to bring suit." *Bldg. Erection Servs.*, 376 F.3d at 805. Because the crane failure occurred in 1999, outside the warranty period, and because the plaintiff

10

brought suit in November 2000, more than four years after the expiration of the warranty period, the claim was time-barred. *Id.* at 806.

The plain language of the statute itself compels this reading of Missouri law. Mo. Rev. Stat. § 400.2-725(2) provides an exception from the four year limit "where . . . discovery of the breach must await the time of such performance." In such cases, "the cause of action accrues when the breach is or should have been discovered." *Id.* In a warranty extending to future performance, the "time of such performance" is limited by the express terms of the warranty. Once the warranty period has elapsed, its performance is over.

The Missouri cases cited by the Owens are not to the contrary. Indeed, they implicitly reach the same conclusion as the Eighth Circuit. For example, in *Ouellette*, the plaintiff purchased a new Cadillac on June 16, 1995, with a 4-year/50,000 mile warranty. Plaintiff filed suit for defects in the Cadillac on October 13, 1999. The Missouri Court of Appeals held that "for any defect discovered in the four-year warranty period, the car buyer has four years to bring a cause of action under the statute of limitations contained in Section 400.2-275. *Ouellette*, 60 S.W.3d at 622. Accordingly, it affirmed summary judgment against the plaintiff on statute of limitations grounds "as to those defects which were actually discovered or should have been discovered before October 14, 1995." *Id.* However, the court reversed as to those defects occurring between October 14, 1995 (four years before the case was filed) and June 15, 1999 (the end of the four year warranty

11

period). *Id.* Implicit in that holding is that defects that were or should have been discovered only after the warranty period expired were not covered by the warranty.

The Owens purchased their car in May 8, 1999, with a three year, 36,000 mile warranty. Because that warranty extended to future performance, the Owens had the full duration of the warranty (until May 7, 2001, or 36,000 miles, whichever came first) to discover any defects in the car within the warranty period. Assuming that the defects should have been discovered on the very last day of the warranty period, they would have had four years from that date, or until May 7, 2005, to bring a cause of action for breach of warranty within the statute of limitations provided by Mo. Rev. Stat. § 400.2-725. Because the Owens sued on April 3, 2006, their claim for breach of express warranty is barred by the statute of limitations.

### 3. The Magnuson-Moss Warranty Act

Count VI of the Owens's Complaint alleged a breach of warranty under the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 et seq. The Warranty Act does not create any implied warranty of merchantability itself, but rather is a vehicle for enforcing warranties created by state law. *See Edwards v. Hyundai Motor Am.*, 163 S.W.3d 494, 499 (Mo. Ct. App. 2005) ("State warranty law lies at the base of all warranty claims under the Warranty Act."). Indeed, the Warranty Act expressly defines "implied warranty" as "an implied warranty arising under State law (as modified by [15 USCS §§ 2308 and 2304(a)] in connection with the sale by a supplier of a consumer product." 15 U.S.C. § 2301(7). Moreover, the Owens state in their Complaint that "[t]he implied

warranty of merchantability and fitness [underlying their claim] arises under state common law as well as Mo. Rev. Stat. § 400.2-314." Compl. ¶ 168. As discussed above, both the Owens's Implied and Express Warranty claims are untimely. Consequently, the Owen's Warranty Act claim is also time-barred.

### 4. Tolling

The Owens argue that the statute of limitations should be tolled, either under Mo. Rev. Stat. § 516.280 or under principles of equity. The Owens first argue that GM concealed the defect from the Plaintiffs. Alternatively, they argue that "equitable principles dictate that the statute of limitations should be tolled."

Fraudulent concealment will rarely be found unless a party has made a positive effort to prevent a plaintiff from bringing suit. *M&D Enterprises, Inc. v. Wolff*, 923 S.W.2d 389, 400 (Mo. App. 1996). Silence is not enough to constitute fraudulent concealment. *Mason v. Whyte*, 660 S.W.2d 383 (Mo. App. 1983). Thus, failing to include the Owens's vehicle in a recall, or failing to notify the Plaintiffs of a recall, does not constitute fraudulent concealment, given the facts alleged on the face of the Owens's Complaint.

The Owens next argue that unidentified "equitable principles" require the statute of limitations to be tolled because GM knew about the defect and the owners could not and did not discover the defect. The Owens's Complaint shows that millions of cars and trucks were recalled because of a problem with the wiper assembly, and the problem was publicly reported and discussed. While GM did have more information than the Owens

about the wiper assembly model that was on the Owens's truck, they did not conceal the recall information from the Owens and given the public nature of the recall it cannot be said that the Owens could not have learned about the defect.

None of the cases cited by the Owens dealt with a statute of limitations for express warranties where the defect was not discovered by the purchaser during the warranty period. Nor have the Owens cited a case which held that a manufacturer's superior knowledge of a defect will toll the statute of limitations merely because the plaintiff did not know about the defect during the warranty period. Nor have the Owens given a reasoned explanation for why there should be such a rule. The Court therefore declines to find such a rule.

The statute of limitations on the Owens's warranty claim was not tolled and the claim must be dismissed for being untimely.

### D. Count V: Missouri Merchandising Practices Act (MMPA)

GM moves to dismiss Count V for failure to plead with particularity. Although the Federal Rules require only notice pleading in general, they also require that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Fed. R. Civ. P. 9(b). The "circumstances" of the fraud "'include such matters as the time, place and contents of false representations, as well as the identity of the person making the misrepresentation and what was obtained or given up thereby.'" *Commercial Property Investments, Inc. v. Quality Inns Int'l*, 61 F.3d 639, 644 (8th Cir. 1995) (quoting *Bennett v. Berg*, 685 F.2d 1053, 1062 (8th Cir.1982)).

"Because one of the main purposes of the rule is to facilitate a defendant's ability to respond and to prepare a defense to charges of fraud, conclusory allegations that a defendant's conduct was fraudulent and deceptive are not sufficient to satisfy the rule." *Id.* Rule 9(b)'s particularity requirements apply with equal force to state consumer fraud statutes as they do to common law fraud claims. *In re GMC Anti-Lock Brake Prods. Liab. Litig.*, 966 F. Supp. 1525, 1536 (E.D. Mo. 1997), *aff'd, Briehl v. GMC*, 172 F.3d 623 (8th Cir. 1999); *see also FDIC v. Bathgate*, 27 F.3d 850, 876 (3rd Cir. 1994).

The private right of action created by the MMPA requires proof of, among other things, an "act, use or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise." Mo. Rev. Stat. § 407.020. In their Complaint, the Owens allege that GM vehicles with identical wiper assemblies were the subject of multiple investigations by the NHTSA and that GM voluntarily recalled some vehicles to appease NHTSA's concerns. The Owens allege that GM was aware of 11 accidents related to wiper failure and over 225,000 warranty claims made due to the wipers at the time the Owens purchased their Tahoe. They allege that "GM unfairly concealed and/or omitted material facts from Class Plaintiffs and putative class members concerning the defective windshield wiper control modules in an effort to induce Class Plaintiffs to enter into an obligation to acquire title or interest in the Class Vehicles." Compl. ¶ 156. They further allege that "GM knew of the defects in the windshield wiper control modules no later than June 1997, and failed to

15

inform or otherwise warn Class Plaintiffs and putative class members who purchased and/or leased 1998 and 1999 tear model Class Vehicles of such defects." Compl. ¶ 157.

The basis of the Owens's MMPA claim is a material omission by GM in connection with the sale of the Tahoe. It is clear from the Complaint precisely what information the Owens allege GM omitted and/or concealed. That is sufficient to satisfy the particularity requirements of Rule 9 in this case. Requiring the Owens to plead with particularity which agent of GM omitted the material information and precisely where and when the omission occurred would put the Owens in the untenable position of having to plead a negative. Such a draconian reading of Rule 9 would read the words "concealment, suppression, or omission" right out of the MMPA by making it impossible to take such a claim beyond the pleading stage.

The U.S. District Court for the Eastern District of Missouri faced the same issue in *Cain v. Arthrocare Corp.*, 2006 U.S. Dist. LEXIS 46427 (E.D. Mo. 2006). In that case, a patient who had undergone rotator cuff surgery sued the manufacturer of broken suture anchors implanted into her shoulder bones. She alleged that the manufacturer had failed to disclose its foreknowledge of the anchors' propensity to break. Defendant manufacturer moved to dismiss under Rule 12(b)(6) for failure to plead with particularity as required under Rule 9(b). The Eastern District denied the motion, holding that "Plaintiff's allegation that Defendant's failure to disclose the suture anchor's history constituted concealment and/or omission under the MPA, the omission was material, and

16

that the unfair practice caused a substantial injury to Plaintiff is sufficient under Rule 12(b)(6)." *Cain*, 2006 U.S. Dist. LEXIS 46427, at *6-7.

Because the Owens have placed GM on notice of the particular material omissions underlying their claim, Count V will not be dismissed.

**III. Conclusion**

Accordingly, it is hereby

ORDERED that Defendant's Motion to Dismiss [Doc. # 15] is GRANTED in part and DENIED in part. The Motion is DENIED as to Counts I and V for Unjust Enrichment and Violation of the Missouri Merchandising Practices Act. The Motion is GRANTED as to the remaining Counts. Count II (Injunctive Relief), Count III (Breach of Implied Warranty), Count IV (Breach of Express Warranty), and VI (Breach of Implied Warranty under the Magnuson-Moss Warranty Act) are DISMISSED.

                                            s/ NANETTE K. LAUGHREY
                                            NANETTE K. LAUGHREY
                                            United States District Judge

Dated: September 28, 2006
Jefferson City, Missouri