IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| TIMOTHY C. OWEN, and GLORIA J. OWEN, on behalf of themselves and all others similarly situated, | ) ) ) ) | |
| Plaintiffs, | ) ) | Case No. 06-4067-CV-C-NKL |
| v. | ) ) | |
| GENERAL MOTORS CORPORATION, | ) ) | |
| Defendant. | ) | |

ORDER

Pending before the Court are Plaintiffs' Motion to Amend/Correct Complaint [Doc. # 50] and Defendants' Partial Motion to Dismiss [Doc. # 61]. For the reasons set forth below, the Motion to Amend is denied and the Partial Motion to Dismiss is granted.

**I.     Motion to Amend**

Plaintiffs filed a six count putative class action against General Motors ("GM") in April 2006 over the failure of windshield wipers on their 1999 Chevrolet Tahoe. GM moved to dismiss the Complaint on July 12, 2006. While that motion was pending before the Court, Plaintiffs moved for leave to file an Amended Complaint adding two additional Counts with approximately 40 new paragraphs of supporting factual averments. In a footnote in their Motion, Plaintiffs represented to the Court that

> The Additional Allegations, beginning at paragraph 121, have also been incorporated into Counts I through VI. . . . Because the parties have already

1

> briefed the issues raised in Counts I through VI, the Class Action Complaint
> originally filed in this action has not otherwise been materially altered in
> any other respect so as to avoid the necessity for re-briefing these issues.

Am. Compl. n. 1. Based on this representation, the Court granted leave to amend the Complaint on September 27 and ruled the pending motion to dismiss the following day, dismissing Count III (Breach of Implied Warranty), Count IV (Breach of Express Warranty), and Count VI (Breach of Implied Warranty under the Magnuson-Moss Warranty Act) on statute of limitations grounds.[1] The dismissal Order did not consider the two new Counts most recently added to the Complaint.

The Owens did not file a motion to reconsider the dismissal Order. Instead, they filed a second motion for leave to amend their complaint "to correct the factual pleading deficiencies noted by the Court in its [dismissal Order]." Pl. Sugg. in Supp. Mot. to Amend at 2. Plaintiffs did not attach a proposed Amended Complaint because they proposed no changes to the existing Amended Complaint which the Court had previously allowed. Rather, Plaintiff's wanted the Court to reconsider its Order dismissing Counts III, IV, and VI in view of the 40 additional paragraphs supporting the two new Counts which they had previously added in the Amended Complaint. But those additional averments were already incorporated into Counts III, IV, and VI by virtue of the Court's September 27 Order granting the first Motion to Amend. Indeed, the Court granted the first motion to amend based on the Plaintiffs' representation that those additional averments did not "materially alter" Counts III, IV, and VI "so as to avoid the necessity

---

[1] The Court also dismissed Count II for injunctive relief for lack of standing, which Plaintiffs do not dispute in their present motion.

for re-briefing these issues." Plaintiffs now ask the Court to ignore their previous representation that these additional facts did not affect Counts III, IV, and VI and did not require additional briefing.

If Plaintiffs wanted the Court to reconsider its dismissal Order based on some overlooked legal authority or misunderstood facts, they should have filed a timely motion to reconsider. If they wanted the Court to consider the additional factual averments in the Amended Complaint when ruling the previous motion to dismiss, they should not have told the Court that those facts were immaterial to the Counts at issue. Plaintiffs cannot seek the Court's leave to amend their complaint based on one representation only to recant once they get their new facts through the door. In any event, as will be discussed in greater detail below with regard to GM's Motion to Dismiss the new counts, Plaintiffs' additional factual averments in paragraphs 121-162 would not have altered the outcome of the Court's previous ruling. For both of these reasons, Plaintiffs Second Motion to Amend is denied.

## II.    Motion to Dismiss

The Court has previously dismissed Counts II, III, IV, and VI. Defendants now move to dismiss Count I for unjust enrichment, Count VII for breach of contract, and Count VIII for fraudulent concealment.

### A.    Breach of Contract

Count VII of the Owens's Amended Complaint alleges that the warranty accompanying their Tahoe "contains a promise that GM might in the future, without

3

regard to the express warranty, implement a Special Policy Adjustment Program ('SPAP') to fund repairs not covered by the warranty." Am. Compl. ¶ 222. The Owens further allege that this warranty includes "an implied promise that, should GM create a 'policy' or 'program,' it will be applied fairly and uniformly to the universe of similarly-situated owners/lessees, and not to any arbitrarily-selected subset." *Id.* ¶ 223. The Owens allege that GM breached its contract for the sale of the Tahoe because GM "did not repair the Owens's vehicle, or the vehicles of putative class members who made a claim for repair or

reimbursement, even though such owners/lessees experienced the same defect as those owners/lessees who benefitted under the SPAP." *Id.* ¶ 224. However, because GM had no contractual obligation to initiate any Special Policy Adjustment Program, let alone to include the Owens's Tahoe within such program, Count VII fails to state a claim for breach of contract.

Page 29 of the warranty booklet accompanying the Owens's Tahoe contains the following provision[2]:

> Special Policy Adjustment Programs Beyond the Warranty Period
>
> Chevrolet is proud of the protection afforded by its warranty coverages. In order to achieve maximum customer satisfaction, there may be times when Chevrolet will establish a special policy adjustment program to pay all or part of the cost of

---

[2] "When deciding a motion to dismiss, a court may consider the complaint and documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading." *Kushner v. Beverly Enterprises*, 317 F.3d 820, 831 (8th Cir. 2003)

> certain repairs not covered by the warranty or to reimburse certain repair expenses you may have incurred. Check with your Chevrolet dealer or call the Chevrolet Customer Assistance Center to determine whether any special policy adjustment program is applicable to your vehicle.
>
> When you make an inquiry, you will need to give the year, model and mileage of your vehicle and your Vehicle Identification Number (VIN).

Nothing in this provision binds GM to the future performance of any obligation. It is not a promise but merely notice that GM may do something for the benefit of its customers in the future. A promise to engage in behavior of an indefinite sort is an illusory promise. *Schell v. Lifemark Hosps.*, 92 S.W.3d 222, 229 (Mo. Ct. App. 2002). An illusory promise does "not purport to put any limitation on the freedom of the alleged promisor. If A makes an illusory promise, A's words leave A's future action subject to A's own future whim, just as it would have been had A said nothing at all." JOSEPH M. PERILLO & HELEN HADJIYANNAKIS BENDER, 2 CORBIN ON CONTRACTS § 5.28 (rev. ed. 1995). The phrase, "there may be times when Chevrolet will establish a special policy adjustment program," includes the possibility that there may never be such times. There is no obligation there to breach.

In their Suggestions in Opposition, the Owens recast their argument, conceding that the SPAP provision does not give rise to a valid, enforceable contract in and of itself. Instead, they argue that once GM elected to initiate a special policy adjustment program to replace the wiper assembly in one set of GM vehicles, GM was then bound by the covenant of good faith and fair dealing to offer participation in that SPAP to all GM owners with the same wiper assembly. In concrete terms, the Owens's argument is this:

even if GM had no obligation to issue a recall, once they recalled some vehicles, they had a good faith duty to recall all vehicles with the same part.

While such practice may have been a prudent business decision for GM, nothing in the Owens's warranty booklet obligated GM to do so. Missouri law implies a duty of good faith and fair dealing in every contract, but "[t]he extent of the duty of good faith is determined by the express terms and expected benefits of the contract." *Countrywide Servs. Corp. v. SIA Ins. Co.*, 235 F.3d 390, 393 (8th Cir. 2000). "[T]he implied duty of good faith and fair dealing does not extend so far as to undermine a party's general right to act on its own interests in a way that may incidentally lessen the other party's anticipated fruits from the contract." *Id.* (internal quotation omitted). GM undertook no obligation when it notified the Owens of the possibility of future recalls. The fact that GM acted for the benefit of some other customers by initiating a recall of some vehicles does not change the terms of its warranty to the Owens.

Of course, there are times when an illusory promise can still give rise to an obligation of sorts. Justice Cardozo famously opined that "A promise may be lacking, and yet the whole writing may be instinct with an obligation, imperfectly expressed." *Wood v. Lucy, Lady Duff-Gordon*, 222 N.Y. 88, 91 (N.Y. 1917). In that case, Lady Duff-Gordon contracted with an agent to place her endorsement on certain fashionable apparel. The agent was to have the exclusive right to do so for a period of one year in exchange for half of all profits on such contracts. During the contract period, Lady Duff-Gordon placed her endorsement on certain articles herself without paying the agent his share. He

6

sued for half of her profits under the exclusivity clause of their contract, but Lady Duff-Gordon argued that the contract was void for lack of consideration since the agent hadn't promised to undertake any particular course of action. Justice Cardozo disagreed, reading into the contract an implied promise that the agent would use his best efforts to place her endorsement. *Id.* at 90-91. Although the Owens don't cite *Wood v. Lucy, Lady Duff-Gordon*, they would have the Court find a similar implied promise in the present case. But unlike the agent in that case who promised–however unspecifically as to the means or quantity–to place Lady Duff-Gordon's endorsements for the period of one year, GM did not promise to do anything. Having made no promise to initiate any recalls, it cannot be said that GM had an obligation to grant a purely gratuitous recall to all its customers just because it chose to do so with some of them. As the Owens can prove no set of facts entitling them to relief for breach of contract on the SPAP provision, Count VII will be dismissed.

### B. Fraudulent Concealment

In Count VIII, the Owens allege that GM had superior knowledge no later than June 1997 that its windshield wiper assemblies had a dangerous defect and were prone to failure outside the warranty period. They further allege that GM had a duty to disclose any such knowledge to them that they could not obtain themselves through due diligence. Finally, the Owens allege that despite such a duty, GM concealed its superior knowledge.

Under Missouri law, "a failure to disclose a material fact is considered to be an implicit representation of the nonexistence of such fact on which a party may rely, but

7

only if the alleged fraud-feasor has a duty to speak." *Independent Bus. Forms v. A-M Graphics*, 127 F.3d 698, 701 (8th Cir. 1997). A duty to disclose arises "either where there is a relation of trust and confidence between the parties or where one party has superior knowledge or information not within the fair and reasonable reach of the other party." *Reeves v. Keesler*, 921 S.W.2d 16, 21 (Mo. Ct. App. 1996). As the Owens do not allege any fiduciary relationship with GM, any duty to disclose can only have arisen from the possession of superior knowledge not fairly within the Owens's reach.

The Owens bought their Tahoe on May 8, 1998. As a practical matter, this means that any superior knowledge, the concealment of which would constitute a misrepresentation the Owens could have relied on in purchasing their truck, must have been known to GM before the sale date. *See Smith v. Firestone Tire & Rubber Co.*, 755 F.2d 129, 135 (8th Cir. 1985) (holding that Missouri law imposes no post-sale duty to warn of a newly discovered defect absent a federally mandated recall). The only information the Owens allege to have been known to GM before May 8, 1998, and which was not disclosed to the public comes from an internal GM memo from June 1997 discussing the problem of wiper failure. Listed under the heading "KNOWN INFORMATION" in that memo are the following facts:

- Fractured solder joint at harness connector is causing failures.

- All 7 joints are susceptible to failure. Pattern is random.

- Same controller used on multiple platforms and multiple Model Years [1993-98].

- Failure begins to occur after 12 months in service.

8

- Failure rates are much higher in southern regions.

- Analysis of '95 warranty returned parts concludes that the failures are the result of fatigue over time, not a single catastrophic incident.

Am. Compl. Ex. 37. Despite the inconclusive nature of the memo, the fact that the Owens's Tahoe was a 1999 model, and the fact that the wipers on the Owens's Tahoe did not malfunction the entire time they were under warranty, the Owens argue that Missouri law would impose upon GM a duty to disclose this information to prospective buyers.

The problem with the Owens's argument, beside the lack of legal authority supporting it,[3] is the untenably broad definition of "superior knowledge" it assumes. Plaintiffs allege that GM "superior knowledge" that its wiper assemblies were likely to break after the warranty period expired.[4] But of course every manufacturer knows its products are likely to break at some point outside the warranty period. That is precisely why products are warranted only for finite periods: a manufacturer makes choices in designing and building a product, knowing that those choices make the product's failure more or less likely after a certain point. Based on its assessment of the variables contributing to eventual breakdown, a manufacturer may warrant that the product will not break for a certain number of years during which it believes malfunction is less probable.

---

[3] In fact, at least three other courts have expressed skepticism that a duty to disclose can arise from such knowledge. See *In re GMC Anti-Lock Brake Prods. Liab. Litig.*, 966 F. Supp. 1525, 1535 (E.D. Mo. 1997), *aff'd, Briehl v. GMC*, 172 F.3d 623, 625 (8th Cir. 1999); *Taylor v. American Honda*, 555 F. Supp. 59, 64 (M.D. Fla. 1982); *Mason v. Chrysler Corp.*, 653 So. 2d 951, 954-55 (Ala. 1995).

[4] Superior knowledge that a part would fail within the warranty period could not form the basis of fraudulent concealment claim because the warranty would obviate any damages, an essential element of the claim.

9

This is an economic decision, and the difference between the estimated longevity of the product and the length of the warranty covering it influence its purchase price. A product with a ten year warranty should cost more (and can be assumed to last longer) than a similar product with only a five year warranty. As these kinds of decisions go into the warranting of every product, a manufacturer's knowledge that its product may malfunction sometime after its warranty expires cannot be considered "superior knowledge" for the purposes of a fraudulent concealment claim. Indeed, every consumer must be charged with the knowledge that a product she purchases may and probably will break at some point in the future, most likely after the warranty has expired.[5]

As the Owens have not alleged the concealment of any other superior knowledge with sufficient particularity to satisfy the pleading requirements of Fed. R. Civ. P. 9, they have failed to state a claim for fraudulent concealment under Missouri law and Count VIII must be dismissed.[6]

### C. Unjust Enrichment

To state a claim for unjust enrichment in Missouri, plaintiffs must allege that (1) they conferred a benefit on the defendant; (2) the defendant acknowledged or recognized that the benefit was conferred; and (3) the defendant accepted and retained the benefit in circumstances that would render that retention inequitable. *Childress Painting & Assocs.*

---

[5] Because this is not a products liability case, nothing in this section should be interpreted to be applicable to a products liability case.

[6] As the Owens's claim for fraudulent concealment fails for lack of a duty to disclose, their renewed tolling argument based on fraudulent concealment–which the Court declined to consider above in the context to their second Motion to Amend–would have failed as well.

*v. John Q. Hammons Hotels Two, L.P.*, 106 S.W.3d 558, 562 (Mo. Ct. App. 2003). The Owens allege that they and other putative class members conferred a benefit on GM "by purchasing and/or leasing the defective Class Vehicles and repairing the defective windshield wiper control modules at their own expense, or continuing to operate the Class Vehicles in a defective condition saving GM the cost of repair." Am. Compl. ¶ 165. This allegation assumes that GM had some obligation to repair the defective wiper assemblies which the Owens repaired at their own expense. However, the warranty covering the Owens's wiper assembly had expired before the wipers failed, and GM had no contractual obligation to repair or replace the wiper module out of warranty. Thus, the Owens conferred no benefit on GM by paying for the repair out of their own pockets. To the extent that the Owens argue a benefit was conferred on GM by the fact that they overpaid for a Tahoe with defective wipers, that argument is foreclosed by the existence of the warranty which they knew would last only four years. Because the Owens have not alleged that a legally cognizable benefit was conferred on GM, their unjust enrichment claims fails to state a claim on which relief can be granted. Count I must therefore be dismissed.

### III. Conclusion

Accordingly, it is hereby

ORDERED that Plaintiffs' Motion to Amend/Correct Complaint [Doc. # 50] is DENIED. It is further

ORDERED that Defendants' Partial Motion to Dismiss [Doc. # 61] is GRANTED. Counts I, VII, and VIII are DISMISSED.

                                                    s/ Nanette K. Laughrey
                                                    NANETTE K. LAUGHREY
                                                    United States District Judge

Dated: <u>January 18, 2007</u>
Jefferson City, Missouri

12

Case 2:06-cv-04067-NKL   Document 89   Filed 01/18/07   Page 12 of 12