IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | |
|---|---|
| TIMOTHY C. OWEN, and GLORIA J. OWEN, on behalf of themselves and all others similarly situated,<br><br>    Plaintiffs,<br><br>v.<br><br>GENERAL MOTORS CORPORATION,<br><br>    Defendant. | Case No. 06-4067-CV-C-NKL |

ORDER

One claim under the Missouri Merchandising Practices Act ("MMPA"), Mo. Rev. Stat §§ 407.020(1), 407.025, remains in Timothy and Gloria Owens' ("the Owens") putative class against Defendant General Motors ("GM"). The Owens contend that they were damaged by an unfair trade practice because their windshield wipers malfunctioned in dangerous conditions outside the warranty period in a manner that GM knew was likely to happen but failed to tell them when they bought the Tahoe. Pending before the Court are GM's Motion for Summary Judgment [Doc. # 122] and Motion to Strike Plaintiff's Expert Witness Jim Dobbs [Doc. # 133], the Owens' Motion for Class Certification [Doc. # 124] and the Owens' Motion to Amend the Class Definition [Doc. # 125]. Because the Court grants GM's Motion for Summary Judgment, the other Motions are denied as moot.

1

**I.     Facts**

The Court assumes the following facts in favor of the Owens as the party resisting summary judgment.  The Owens purchased a 1999 Chevrolet Tahoe on May 8, 1998, which came with a three year/36,000 mile limited warranty.  No one at the dealership made any statements about the windshield wipers and gave the Owens' no information about their propensity to fail.  Nonetheless, at the time of the sale, GM knew that earlier model GM vehicles with the same single-sided windshield wiper circuit board (WWCB) as the one installed in the Owens' Tahoe had failed on numerous occasions, especially after the warranty expired.  These failures had even prompted an investigation by the National Highway Traffic Safety Administration (NHTSA) and led to a limited recall of some earlier model GM vehicles with the same wiper assembly.  GM admitted in the course of that investigation that if the wipers failed during heavy rain, there would be a potential for serious accident.

During the NHTSA's investigation, GM put together its own team of experts to find the source of the problem, a team which included the Owens' expert witness, Michael Pecht, and his consulting team.  The GM investigatory team found fifteen categories of reasons for the wiper failure among the malfunctioning wipers that had been replaced under warranty.  In 23 percent of the replaced wiper assemblies, no defect of any kind could be found.  In others, particularly those made after 1994, the periphery of some circuit boards came into contact with the aluminum casting of their housing.  Some circuit boards had a greater level of interference than others.  The investigatory team also found

strong variation in the quality of solder joints among the units that failed, and that those produced at the plant in Juarez, Mexico were particularly prone to "fatigue cracking."

Dr. Pecht's team recommended that GM replace its single-sided WWCB with double-sided WWCB, which would be less prone to solder joint failure than the single sided units. Although GM decided to take Pecht's advice, the company continued to manufacture the single-sided circuits boards until the double-sided ones were ready for production, and continued installing the single-sided circuit boards in new vehicles until the supply was exhausted. It also recalled over a million vehicles with the single-sided WWCB based on within-warranty failure rates; however, it did not consider the out-of-warranty failure rates in determining which vehicles to recall. As a result, it did not recall any 1997, 1998, or 1999 vehicles, like the Owens' Tahoe, with the same single-sided circuit boards because any malfunction in such vehicles was likely to malfunction outside the warranty period.

On October 9, 2004, six and a half years and 98,000 miles after the Owens purchased their Tahoe, the wipers stopped working during a thunderstorm under hazardous highway conditions. Because the Tahoe was out of warranty, the Owens had to pay $91.87 to replace the wiper control module themselves. They did not retain the broken wiper assembly and have no evidence as to the exact cause of its failure. However, they learned from the mechanic who replaced the single sided WWCB that GM had recalled other vehicles with the same kind of circuit board used in their Tahoe but that theirs was not one of the models recalled.

3

The Owens subsequently filed suit against GM for, among other things, a violation of the MMPA and retained GM's former consultant, Dr. Pecht, as an expert. In his expert report for this litigation, Dr. Pecht states:

> It is thus my opinion that the single sided / CEM circuit card assembly, common to vehicles manufactured by GM prior to the implementation of the double sided FR-4 plated through hole configuration with a raised connector profile, was not robust enough and not appropriate for a vehicle which must survive more than a 3 year, 36,000 mile warranty period. . . . It is also my opinion that any vehicle equipped with the FNDP single sided CEM circuit card should have that FNDP card replaced with a two-sided FR-4 plated through hole configuration with a raised connector profile; otherwise there is an increasing likelihood that it will fail outside the warranty period.

Other than Dr. Pecht's opinion that the single-sided circuit board used in the Owens' Tahoe had an "increasing likelihood that it will fail outside the warranty period," there is no evidence before the Court as to why the Owens' wiper blades actually did fail.

## II. Discussion

The MMPA provides that

> Any person who purchases or leases merchandise primarily for personal, family or household purposes and thereby suffers an ascertainable loss of money or property, real or personal, as a result of the use or employment by another person of a method, act or practice declared unlawful by section 407.020, may bring a private civil action in either the circuit court of the county in which the seller or lessor resides or in which the transaction complained of took place, to recover actual damages.

Mo. Rev. Stat. § 407.025. Section 407.020(1) further enumerates the unlawful acts as "any deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise in trade or commerce or the solicitation of any funds

4

for any charitable purpose."  Thus, to succeed on a claim under the MMPA, a plaintiff must prove the following elements:  (1) the act, use or employment of; (2) a deception, fraud, false pretense, false promise, misrepresentation, unfair practice, or a concealment, suppression or omission of a material fact; (3) occurring in connection with the sale or advertisement of any merchandise in trade or commerce; (4) resulting in an ascertainable loss of money or real or personal property; (5) occurring to a person who purchases or leases merchandise primarily for personal, family or household purposes.  *See Universal Sewing Supply, Inc. v. Artek Sewing Supplies, Inc*., 2005 U.S. Dist. LEXIS 33428, *6, Case No. 4:05CV974 JCH (E.D. Mo. Sept. 8, 2005).

Assuming for the purposes of summary judgment that GM's failure to tell the Owens about wiper malfunctions in similar vehicles was an omission of a material fact in connection with the sale of a car for personal use, the Owens have not offered any evidence from which a reasonable juror could find that they lost money "as a result of" that omission.  The Owens' did not retain possession of the malfunctioning wiper assembly when they had it replaced so no tests have been performed to ascertain the cause of its failure.  At best, their expert has reported that the kind of single-sided circuit board used in their Tahoe should have been replaced by a superior circuit board that was less likely to fail outside the warranty period.  There is evidence that other vehicles with the same type of wiper circuit board have failed because of weak solder joints.   But there is also evidence cited by the Owens' own expert when he still worked for GM that 23

percent of the wipers that failed had no ascertainable cause. And there are many vehicles with the same single-sided circuit board that have never failed.

The fact that the Owens' wipers failed after six years and almost 100,000 miles suggests any number of plausible causes for the failure. But, in any case, there is nothing more than conjecture and a statistical correlation between the Owens' Tahoe and the malfunction of similar parts in other vehicles. The fact that innumerable GM vehicles with the same part suffered no malfunction, and that 23 percent of those that did malfunction and were replaced under warranty had no ascertainable cause, undermines the assumption that the Owens' wipers failed due to a defect which GM knew to exist in some of its models when it sold the Owens their Tahoe. In short, the Owens have failed to prove proximate cause.

In another MMPA case brought in this District, a husband and wife sued the Bic Corporation after a fire erupted on their boat when one of the plaintiffs attempted to light a cigarette with a Bic lighter. *See Willard v. Bic Corp.*, 788 F. Supp. 1059 (W.D. Mo. 1991). The plaintiffs argued that Bic knew its lighters had a propensity to spew flammable liquid but omitted that fact in connection with the sale of the lighter in violation of the MMPA. *Id.* at 1071. However, the plaintiffs had also filled the boat's gas tank moments earlier and lingering gasoline fumes were an equally likely cause of the fire. *Id.* at 1061. When the fire erupted, Mrs. Willard lept overboard to extinguish the flames on her body and lost the lighter in the lake. *Id.* at 1062. Thus, no expert tests were performed on the actual lighter she used. Plaintiffs did, however, introduce the expert

6

testimony of an accident reconstructionist and another scientist named Dr. Germania, the latter of whom testified–based on the reconstruction of the former–that the explosion was caused by a "malfunction of the lighter that caused an uncontrolled ejection of the . . . fuel." *Id.* at 1067. The court noted that Dr. Germania never examined the subject lighter or conducted any testing in support of his opinions. *Id.* at 1068. Consequently, the Court granted Bic's motion for summary judgment, holding that

> plaintiffs have not shown that an injury was proximately caused by defendant's actions. This Court has found that plaintiffs have not shown that a malfunction of the lighter was the more reasonable probable cause of the accident. Therefore, plaintiffs do not fall under the statute because they cannot show that they purchased a good and thereby suffered a loss as a result of its use. Plaintiffs were unable to refute the equally plausible theory that an accumulation of gas fumes caused the fire when Mrs. Willard lit the Bic lighter.

*Id.* at 1071 (internal citations omitted).

Like the plaintiffs in *Willard*, the Owens have offered no evidence that the defect which they claim GM omitted to tell them about was the cause of the wiper malfunction in their Tahoe. Nevertheless, they argue that proximate causation can still be inferred under a theory of *res ipsa loquitur* because malfunctions of this sort don't simply happen without some defect or negligence. They cite *Fain v. GTE Sylvania, Inc.*, in which the Missouri Court of Appeals upheld a jury award in products liability case when an exploding television caused a house fire. 652 S.W.2d 163 (Mo. Ct. App. 1983). That court held that "[t]he jury could similarly infer that the television set was defective, even without proof that some specific component of the set was defective. Although the mere fact of an accident, standing alone, does not generally make out a case that a product is

7

defective, common experience tells us that some accidents do not ordinarily occur in the absence of a defect and in those situations the inference that a product is defective is permissible." *Id.* at 165. *Fain* is of little help to the Owens, however, as it involved strict products liability rather than a violation of the MMPA. While the Fains only needed to prove that the spontaneous combustion of their television was caused by a defect, the Owens need to prove that the malfunction of their windshield wipers was caused by the particular defect which GM knew of and failed to mention. It is the latter piece of the puzzle which the Owens have failed to produce.

The Owens also cite *Rauscher v. General Motors Corp.*, another products liability case in which the Missouri Court of Appeals reversed a grant of summary judgment in GM's favor. 905 S.W.2d 158 (Mo. Ct. App. 1995). In that case, a Buick which had frequently stalled unexpectedly, was involved in an accident when it stalled suddenly in an intersection. Although the trial court had granted GM summary judgment for lack of proximate cause, the Court of appeals held that

> A jury could surely find that an automobile subject to unpredictable stalls and stops, which might occur in traffic, was in a defective condition, and that the condition was unreasonably dangerous. Expert testimony would not be needed; jurors themselves could appreciate the danger by reason of their own experience. For more than four years, indeed, expert mechanics had been unable to analyze or correct the difficulty. It is not necessary for the plaintiff to demonstrate the precise nature of the defect. The action is based not on a defect, but on a defective condition.

*Id.* at 160. *Rauscher* is inapposite for the same reason as *Fain*, as is evident from the last sentence of its holding. In a strict liability case, a *res ipsa loquitur* theory may be sufficient because "[t] is not necessary for the plaintiff to demonstrate the precise nature

8

Case 2:06-cv-04067-NKL   Document 163   Filed 06/05/07   Page 8 of 10

of the defect." But in the instant case, evidence of the precise nature of the defect is paramount because only the defect which GM failed to disclose can give rise to an MMPA claim. Plaintiffs have offered no such evidence.

Furthermore, the Owens have also not offered any evidence that they would not have purchased their Tahoe had GM told them of the potential defect in single-sided windshield wiper circuit boards. In order for the $91.87 they paid to replace the wiper assembly to be a loss "as a result" of the omission, the Owens must offer some evidence that they would not have sustained the loss but for the omission. If, somewhere in the record, the Owens have produced an affidavit that they would not have bought the Tahoe had they known, it has not been drawn to the Court's attention and the Court will not sift through the record to find support which the Plaintiffs themselves have not brought forward. *See Howard v. Columbia Pub. Sch. Dist.*, 363 F.3d 797, 800 (8th Cir. 2004) ("we will not sort through a voluminous record in an effort to find support for the plaintiff's allegations."). GM is therefore entitled to judgment as a matter of law.

## III. Conclusion

Accordingly, it is hereby

ORDERED that GM's Motion for Summary Judgment [Doc. # 122] is GRANTED. It is further

ORDERED that GM's Motion to Strike Plaintiff's Expert Witness Jim Dobbs [Doc. # 133], the Owens' Motion for Class Certification [Doc. # 124] and the Owens' Motion to Amend the Class Definition [Doc. # 125] are all DENIED as MOOT.

9

Case 2:06-cv-04067-NKL   Document 163   Filed 06/05/07   Page 9 of 10

s/ Nanette K. Laughrey  
NANETTE K. LAUGHREY  
United States District Judge

Dated: June 5, 2007
Jefferson City, Missouri